UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LIZBETH HEALY,

          Plaintiff,

    v.

FORTIS BENEFITS INSURANCE
COMPANY, et al.,

          Defendants.

Case No. 14-cv-00832-RS

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

## I. INTRODUCTION

In this action brought under ERISA, 29 U.S.C. § 1132(a)(1)(B), plaintiff Lizbeth Healy challenges a determination that her right to receive benefits under a long term disability insurance policy provided by her former employer terminated as of December 2012.  Healy contends, in essence, that the medical evidence supports the conclusion that her physical conditions worsened, or at least did not substantially improve from the time she first was found eligible for benefits in 2010, and that there was no basis for concluding she has not continued to suffer from a qualifying disability.  Defendant argues that after two years of benefits were paid, the policy required Healy to show that she was disabled from working in *any* profession, not just her prior job, and that the medical evidence did not support such a conclusion.

Based on the parties' written submissions, oral argument, and the administrative record, the court finds that defendant erred in denying Healy's claim.  This order comprises the findings

1   of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a).[1]

2

3                              II.  FINDINGS OF FACT

4          Plaintiff Lizabeth Healy was employed by Lighthouse Capital Partners, Inc. as the Director

5   of Contract Administration from 2004 through early 2011.  Prior to that she had been employed in

6   similar positions with various employers since 1994.  At the time of her disability claim, her

7   annual salary was $110,500.

8          Healy's job required nearly continuous computer usage during the work day.  She contends

9   that, as a result, she experienced "unbearable pain in her arms, neck and back, despite work

10  stations adjustments, including the use of a sit-stand station and dictation software."  Regular

11  headaches interfered with her focus and concentration, as did her use of pain medications.  After

12  attempting to "work through" these symptoms as they allegedly worsened, in September of 2010

13  Healy filed a long-term disability claim under the plan provided by her employer.  Defendant

14  Union Security Insurance Company ("USIC") is the insurer and plan administrator.[2]

15         At the time of her initial claim, Healy reported neck and lower back pain, with spasms and

16  loss of mobility.  Healy provided a report from a physician, Peter Barry, MD, whom she had

17  consulted in connection with a potential worker's compensation claim.  Dr. Barry found Healy to

18  have cervical disc disease and a cervical sprain, rising to a Class 5 "severe" functional impairment,

19  and that she should be off work until at least October 1, 2010.  USIC eventually approved the

20  disability claim through November 22, 2010.  In December, USIC denied continued benefits.

21         Healy returned to work on January 3, 2011.  After a half-day, she reported experiencing

22

23  _____

    [1] To the extent that any conclusions of law are inadvertently labeled as findings of fact (or vice
24  versa), the findings and conclusions shall be considered "in [their] true light, regardless of the
    label that the . . . court may have placed on [them]."  *Tri–Tron International v. Velto*, 525 F.2d
25  432, 435–36 (9th Cir. 1975).

26  [2]  Healy refers to USIC by the name "Assurant," through which it apparently does business and
    communicates with insureds.

27

28                                      CASE NO. 14-cv-00832-RS
                                        FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    pain that left her unable to continue working.  Her employment was terminated as of January 4,

2    2011.  Healy appealed the prior denial of continuing benefits, submitting documentation from Dr.

3    Jeffrey Stevenson.  In considering the appeal, USIC arranged to have Healy undergo an

4    Independent Medical Examination, conducted by Dr. Corby Kessler.  Dr. Kessler found evidence

5    of limited mobility, and recommended Healy limit her keyboarding to no more than three hours a

6    day, with frequent breaks.  USIC determined the keyboarding restriction would preclude her from

7    performing her regular occupation, and approved her claim for further benefits.

8         Initially, USIC placed a "Special Conditions" limitation on the benefits, which would

9    preclude them from extending beyond 24 months.  Healy appealed that finding.  USIC referred the

10   file to Dr. Lee Fischer, who concluded that Healey's conditions were *not* subject to the Special

11   Conditions limitation, and that determination was reversed.

12        Although Healy was not subject to the "Special Conditions" limitation, under the USIC

13   policy, once she had received 24 months of benefits, the conditions of eligibility changed.  Prior to

14   that dividing line, which in Healy's case passed at the end of July, 2012, the policy defined

15   disability as something that "prevents you from performing at least one of the material duties *of*

16   *your regular occupation.*"  After 24 months, in contrast, the disability must be something that

17   "prevents you from performing at least one of the material duties *of each gainful occupation for*

18   *which your education, training, and experience qualifies you.*"  In other words, for the first two

19   years Healy could receive disability payments for a condition that prevented her from returning to

20   her own job or a substantially similar job, but thereafter could continue receiving payments only if

21   her condition precluded full-time employment in any job for which she was qualified.

22        Accordingly, in April of 2012, at the same time it lifted the "Special Conditions"

23   limitation, USIC advised Healy it would be evaluating her eligibility for continued disability

24   payments beyond the 24 month mark.  USIC's investigation ultimately extended past the 24 month

25   mark, with the result that it paid benefits to Healy through December 18, 2012.  At that point,

26   however, USIC terminated benefits, contending Healy had not shown that she was disabled under

27

28

United States District Court
Northern District of California

the narrower "any occupation" definition that had become effective in July of 2012.  USIC had conducted a Vocational Skills Assessment and a Labor Market Survey, in which it had identified two specific job openings for which it believed Healy was qualified and could physically perform.[3]

At the time USIC terminated Healy's benefits in December of 2012, the medical evidence in the record included the following:

(1) An August 2012 report from Healy's primary care physician, Dr. Stevenson, stating that her rehabilitation and recovery from shoulder surgery was continuing, and that he would consider releasing her for a return to work after her next visit, but only for "modified duty with extensive restrictions."  Dr. Stevenson's "Work Status" report generated from the August appointment included a checked box indicating she should be "off work."

(2) A September 2012 report from the surgeon who had operated on her shoulder, Dr. Noah Weiss, stating that her recovery from that surgery was progressing well, such that she could "probably" return to clerical work, with specified restrictions, insofar as her shoulder recovery issues were implicated.  Dr. Weiss noted, however, that in light of "other significant neck issues," any return to work decisions should be made by Dr. Stevenson.

(3) A September 2012 report from a pain specialist, Dr. Ruben Kalra, who examined Healy and her records on referral from Dr. Stevens.  Dr. Kalra noted ongoing neck pain, and referred Healy to Dr. Tracy Newkirk for an evaluation of possible Thoracic Outlet Syndrome ("TOS").

(4) A September 2012 report from Dr. Stevenson noting some improvements from

---

[3] USIC later conceded one of the positions was slightly outside the 50 mile radius it generally considers relevant.

certain treatments, but continuing to recommend Healy be off work completely.

(5) A November 2012 report from Dr. Stevenson recommending Healy return to work no more than four hours a day, three days a week. Dr. Stevenson noted that he had discussed with Healy the need to begin setting her sights on her "next carrier [sic, career]," and he suggested focusing treatment on what she could do, rather than on what she could not.

In connection with evaluating whether benefits would be continued after the change in definition date, USIC had Healy's medical records reviewed by Dr. Lee Fischer.  Dr. Fischer had first become involved when USIC reassessed applicability of the "Special Conditions" limitation. He supplemented and updated his report several times during 2012.

Dr. Fischer ultimately concluded that "the medical evidence in the file does not indicate physical restrictions or limitations that would restrict or limit the claimant's ability to work with her hands including keyboarding frequently alone or in combination."  Dr. Fischer appears to have reached this conclusion based on his understanding that the conditions observed in Dr. Kessler's IME in June of 2011 "would be expected to improve over time even if no treatment were performed" and that "various physicians documented that [Healy's] condition substantially improved" after the treatments she received.  Dr. Fischer also concluded that Healy's chronic cervical and lumbar spine degenerative disc disease did not preclude her from working full time. The basis of that conclusion is unclear, but appears to reflect an assessment that Healy was obtaining pain relief from treatments provided by Dr. Kalra.

Healy appealed the December 2012 termination of benefits.  She advised USIC that by that point in time she had seen Dr. Newkirk, and been diagnosed with TOS.  She also submitted an Agreed Medical Examiner's report from Dr. Feinberg, which had been prepared in connection with her Worker's Compensation claim.   Dr. Feinberg recommended work restrictions related to Healy's shoulder issues, including being precluded from repetitive use and overhead use.  In light

United States District Court
Northern District of California

of her cervical/lumbar spine issues he also proscribed repetitive neck motions, and repetitive bending or stooping. Dr. Feinberg opined Healy could not return to her prior job absent "significant ergonomic modifications," but did not suggest she could not work full time. Dr. Feinberg rejected any suggestion, however, that Healy suffered from TOS, and specifically recommended against a referral to Dr. Newkirk for an evaluation of that issue. Healy eventually saw Dr. Newkirk at her own expense instead.

To evaluate Healy's appeal, USIC provided her files to Dr. Elizabeth Engelhardt, a Certified Independent Medical Examiner. Dr. Engelhardt concluded that "giving claimant the benefit of doubt," Healy had been disabled from performing any type of work through November 14, 2012. After that date, however, Dr. Engelhardt opined that Healy was capable of sedentary and light work, on a fulltime basis. She endorsed the limitations noted by Dr. Feinberg on overhead reaching, lifting, repetitive neck motions, and the like. USIC denied the appeal. Through counsel, Healy then pursued a further appeal, submitting additional records from Drs. Stevenson and Newkirk. In November of 2013, Healy also submitted a note from Dr. Deepak Sreedharan stating that she had participated in a months-long Functional Restoration Program, but was unable to return to full-time work as of that date.

USIC had Healy's records, including the further submissions, reviewed by Dr. Robert Marks. Dr. Marks opined that after June of 2012, Healy should have been able to use a keyboard, and also "use the now widely available dictation programs," as long she took frequent and appropriate breaks. Dr. Marks placed significant emphasis on indications he saw in the file that Healy's shoulder surgery in 2012 had provided her a degree of relief from prior pain. Dr. Marks asserted the TOS diagnosis was "not well substantiated" and opined that Healy could have worked full time, after late October 2012, when there had been sufficient healing from her shoulder surgery.

USIC's Disability Claims Appeals Committee met in January of 2014 and denied Healy's final appeal. The committee concluded that based on all the medical evidence, Healy was capable

CASE NO. 14-cv-00832-RS
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  of working in "sedentary and light work settings" and that she had a variety of transferable skills

2  on which to draw. This lawsuit followed.[4]

3

4  III. CONCLUSIONS OF LAW

5  A. <u>Standard of Review</u>

6  The plan administered by USIC is governed by ERISA.  A participant in an ERISA plan

7  may bring a civil action to recover benefits, to enforce rights, or to clarify future rights under the

8  terms of the plan.  The parties have stipulated that in this case USIC's decision is subject to de

9  novo review.  A court employing de novo review in an ERISA case "simply proceeds to evaluate

10  whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health &*

11  *Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).  Generally, the court's review is limited to the

12  evidence contained in the administrative record.  O*peta v. Nw. Airlines Pension Plan for Contract*

13  *Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007).

14  "In an ERISA case involving de novo review, the plaintiff has the burden of showing

15  entitlement to benefits." *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp.

16  2d 1151, 1162 (N.D. Cal. 2010); see also *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239

17  (1st Cir. 2010) (placing burden on plaintiff to prove disability); *Sabatino v. Liberty Life Assurance*

18  *Co. of Boston*, 286 F. Supp. 2d 1222, 1232 (N.D. Cal. 2003) (same).  In conducting its de novo

19  review, the court "considers various circumstances when weighing evidence" and "evaluates the

20  persuasiveness of each party's case, which necessarily entails making reasonable inferences where

21  appropriate." *Schramm*, 718 F. Supp. 2d at 1162.

22

23

24  _____

25  [4]  Healy points out that she has been found disabled, and continues to receive benefits under a
   private policy she maintained with Unum.  Healy's Social Security disability claim has been
26  denied, but she is appealing that decision.

27

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

B. Discussion

1. Medical Condition

At the outset, Healy places heavy emphasis on an argument that, in her view, there was no evidence of any substantial *improvement* in her condition, and therefore the most reasonable inference is that she remained disabled and her benefits should not have been terminated.  In *Saffron v. Wells Fargo & Co. Long Term Disability Plan*, the Ninth Circuit noted that "[the administrator] had been paying [the claimant] long-term disability benefits for a year, which suggests that she was already disabled."  522 F.3d 863, 871 (9th Cir. 2008).  The court opined that to find the plaintiff no longer disabled, "one would expect the [evidence] to show an *improvement*, not a lack of degeneration."  Id. (emphasis in original).  This language from *Saffron* "does not impose a burden of proof on a defendant, but rather demonstrates a logical inference that a court may make based on a specific set of facts."  *Schramm*, *supra*, 718 F. Supp. 2d at 1162.

The weakness in Healy's attempt to rely on *Saffron* here, however, is that the applicable policy definition of disability changed after she had been receiving benefits for two years.  Under the express policy terms, it was completely possible, and not unreasonable, that a condition qualifying as disabling from Healy's *own* "occupation," might not prevent her from performing in a different occupation, even without any improvement in her physical condition whatsoever.

The relevant, question, therefore, is whether the medical evidence supported a conclusion that as of the date her benefits were terminated, Healy was disabled from performing "at least one of the material duties of each gainful occupation for which [her] education, training, and experience qualifie[d] [her]."   Healy insists that at the time her benefits were terminated, there was no evidence from any treating physician that she was capable of working full time and/or of keyboarding for sufficient amounts of time to make working in any appropriate occupation feasible.[5]

---

[5] Under the policy provisions as applicable to Healy's salary history, an appropriate job was one which would pay a "gainful" wage of not less than $66,372 annually.

USIC, of course, relied on Dr. Fischer's conclusions to the contrary.  As to the issue of whether and how much Healy could reasonably be expected to keyboard in a day, it is not clear that Dr. Fischer unreasonably disregarded any of the evidence in the medical files.  While Healy points to limitations her various treating and examining physicians noted as to her range of movement during the 2010-2012 time frame, her argument depends on extrapolating from comments about neck and shoulder issues to an inability to keyboard. Although it may be reasonable to presume such limitations might be connected (indeed, Dr. Marks advised frequent breaks from keyboarding for that very reason), there is a marked absence of any findings of express keyboard restrictions by Healy's examining physicians in the relevant time frame.  Given that Dr. Fischer could appropriately also note that Healy had some positive responses to Dr. Kalra's treatment and improvements resulting from her shoulder surgery, his conclusions are not irreconcilable with those of treating and examining physicians.  *Cf. Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (medical opinions rendered following in-person examination were more persuasive than contrary opinions rendered following administrator's paper-only review).  Nevertheless, whether characterized as keyboarding limitations *per se*, or more generalized limitations on repetitive neck and shoulder movements, there was evidence calling into question Healy's ability to perform work in which constant keyboarding would be required.

More significantly, Dr. Fischer's conclusion that Healy was capable of full time work is not supported by such persuasive evidence or analysis as to warrant crediting it above the opinions of the treating physicians.  As noted, he was initially retained merely to evaluate whether the policy "Special Conditions" were applicable.  Consistent with the scope of his assignment, Dr. Fischer concluded Healy's neck and back conditions, were *not* "special conditions" subject to a 24 month limitation on benefits, and he did not evaluate whether they were disabling.  Subsequently, however, Dr. Fischer offered the additional opinion that Healy "is not limited from working full time at any occupation due to chronic cervical and lumbar spine degenerative disc disease

9

(DOD)." The basis for that conclusion, however, is simply unclear. Dr. Fischer lists "additional medical evidence" he reviewed, consisting of reports from Dr. Kalra, and states that it "did not change my previous conclusions reprinted below." Dr. Fischer, however, does not explain how either the additional medical evidence he reviewed, or the prior evidence, led to his conclusion that Healy could work full time. Dr. Stevenson's contemporaneous opinions, based on direct and ongoing examination of Healy, support the conclusion that the pain relief she obtained from shoulder surgery was not sufficient to permit her return to full-time employment in the relevant time period. To the extent Dr. Fischer and later reviewing doctors relied on the improvements Healy realized from that surgery, their conclusions do not adequately account for the fact that Healy's conditions were not limited to the issues that surgery was designed to address. As noted, Dr. Weiss, the shoulder surgeon, expressly observed that Healy's ability to return to work turned on other issues, which Dr. Stevenson was in the best position to evaluate.

The record developed in Healy's subsequent appeals does not fully resolve the conflict between the evidence of ongoing conditions that would interfere with full time work, and the assessments of some doctors to the contrary. Certainly if Dr. Newkirk's TOS diagnosis and opinions are fully credited, or Dr. Sreedharan's assertion of an inability to work is accepted, then a finding of disability would be required. The reviews conducted by Drs. Engelhardt and Marks, however, even if not based on personal examination of Healy, supply some basis for USIC to have questioned the reliability of those opinions. Ultimately, however, even assuming the opinions of Dr. Newkirk and Dr. Sreedharan could be disregarded entirely, there would still be insufficient evidence that Healy was capable of returning to full time work at all, and especially in any environment requiring heavy keyboarding, at the time USIC terminated her benefits.

2. Job availability

USIC's labor market survey identified two possible positions for her, one of which it later conceded was outside (just barely) the geographical range. Moreover, it appears the remaining job

United States District Court
Northern District of California

1    very well may have required a degree of computer usage that would not have been fully consistent

2    with the various restrictions that even USIC's own reviewing doctors were suggesting likely were

3    appropriate.  Merely characterizing Healy as capable of "light" or "sedentary" work is a poor

4    substitute for an analysis that compares her specific impairments to the actual requirements of a

5    particular job.  While it was Healy's burden to prove she was disabled within the meaning of the

6    policy, she met her initial burden to do so by submitting the medical evidence.  USIC's

7    identification of one job opening, which quite possibly required more continual computer use than

8    Healy could safely perform, is not sufficient to show she was not eligible for benefits after the

9    change in definition date.

10

11       In sum, the evidence establishes that Healy, more likely than not, was disabled under the

12   plan's terms continuing after the change in definition date.  To the extent she may have

13   experienced some relief from her shoulder surgery, her conditions nonetheless persisted to

14   preclude her from working full time, particularly in an environment requiring heavy keyboard use.

15   Even apart from the issue of her ability to work full time, there is a lack of evidence of jobs that

16   Healy could perform paying a "gainful" wage and consistent with her experience and physical

17   limitations.

18       The evidence does not support a conclusion that Healy's statements, or her treating

19   professionals' observations and conclusions, lack credibility.  See *Schramm*, 718 F. Supp. 2d at

20   1165 (reinstating long term disability benefits after concluding that plaintiff presented sufficient

21   evidence of her disability and defendant failed to persuade the court that plaintiff or her physicians

22   were not credible).  Accordingly, it was improper for USIC to terminate Healy's benefits.

23

24                      IV.  CONCLUSION

25       Healy is entitled to the reinstatement of her long term disability benefits.  The parties are

26   directed to meet and confer and jointly submit a proposed judgment consistent with this order

27

28

1    within twenty days.

2

3    **IT IS SO ORDERED**.

4

5    Dated:  September 14, 2015

6                                                                    _____

7                                                                    RICHARD SEEBORG
                                                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                                                     CASE NO. 14-cv-00832-RS
28                                                                   FINDINGS OF FACT AND CONCLUSIONS OF LAW

12